UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:23-cr-00470-3-MTS |
| ) | |
| KAIYU WEN, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Government's Motion for Pretrial Detention. Doc. [122]. Upon review of the complete record, the Court will grant the Government's Motion for Pretrial Detention, Doc. [122].

**I.     Legal Standard**

A defendant may be detained before trial "[o]nly if the government shows by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions. . . will *reasonably assure* the defendant's appearance." *United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003) (quoting *United States v. Orta*, 760 F.2d 887, 891 n.20 (8th Cir. 1985) (en banc) (emphasis in original)); *see also* 18 U.S.C. § 3142(c), (e)-(f).  A finding on either ground constitutes a sufficient basis for detention. *United States v. Williams*, 4:20-cr-00348-SRC, ECF No. 30 at *4 (E.D. Mo. Sept. 15, 2020) (citing *United States v. Payne*, 660 F. Supp. 288, 290-91 (E.D. Mo. 1987)). In determining whether there are conditions of release that will reasonably assure the defendant's appearance in court

1

and the safety of the community, this Court looks to 18 U.S.C. § 3142(g), which provides that the Court "will take into account the available information concerning," 1) the nature and circumstances of the offense charged, 2) the weight of the evidence against the person, 3) the history and characteristics of the person, including- -

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

Here, the Government filed a Motion for Pretrial Detention. Doc. [122]. Pursuant to 18 U.S.C. § 3142(f)(2)(A), "[t]he judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required . . . -- (2) upon motion of the attorney for the Government … in a case that involves – (A) a serious risk that such person will flee[.].[1]

The Court makes its written findings of fact and statement of the reasons for detention as contemplated in 18 U.S.C. § 3142(i)(1).

## II. Findings of Fact

Defendant Kaiyu Wen is charged in the above-entitled cause with conspiracy to commit bank and wire fraud in violation of 18 U.S.C § 1349. Defendant had his initial appearance in the Central

---

[1] "[W]hile the § 3142(e)(1) and (g) inquiry is not identical to the § 3142(f)(2)(A) inquiry, many of the same considerations apply." *United States v. Cook*, 87 F.4th 920, 925 (8th Cir. 2023).

2

District of California on March 13, 2024.  The Government moved for detention, Doc. [72], and a detention hearing was held that same date. Following the hearing, United States District Court, Central District of California, Magistrate Judge Alka Sagar, denied the Government's Motion to Detain, Doc. [72], and Defendant was granted a $30,000 appearance bond. Doc. [81]. At the request of the Government, the Order of Release was stayed. *Id*. The Government subsequently requested that this Court extend the stay of release so its Motion to Revoke the Order of Release could be heard in the Eastern District of Missouri. Doc. [77]. On March 14, 2024, this Court issued an Order extending the stay of release and ordered Defendant to be transported to the Eastern District of Missouri. Doc. [78]. Defendant then filed a Motion to Lift Stay of Release Order, Doc. [89]. In the meantime, a second superseding indictment was filed, and the Government filed another Motion for Pretrial Detention. Doc. [122].  On May 23, 2024, Defendant was arraigned, and a hearing was held regarding the pending motions. At the outset of the hearing and with agreement of the parties, the Court proceeded on the Motion for Pretrial Detention, Doc. [122] and denied all the other pending motions as moot,[2] but allowed argument as to those motions to be heard. At the hearing, the parties presented witnesses, argument was heard, and the matter was taken under submission by the Court. The Court has reviewed the entire record, including the motions filed in this matter, the Order of Release issued by the Magistrate Judge in the Central District of California, 2:24-mj-01433, Doc. [81]; the Pretrial Services Report prepared for the Central District of California (California Report), Doc. [113-1]; the Pretrial Services Report prepared for the Eastern District of Missouri (Missouri Report), Doc. [113]; and the exhibits and transcript of the hearing held regarding this matter. *See* Docs. [141], [142].

---

[2] Docs. [72], [77], [89].

### III. Statement of Reasons for Detention

First, the Court considers the nature and circumstances of the offense charged, and the weight of the evidence against Defendant. The Government describes the offenses Defendant is charged with in detail as follows:

> On February 14, 2024, a grand jury sitting in the Eastern District of Missouri indicted Wen, Yu-Chieh Huang ("Huang"), Liang Jin ("Jin"), and Tsz Yin Kan ("Kan"), for violations of Title 18, United States Code, Section 1349 and Title 18, United States Code, Section 1343. Between September 11, 2020 and February 12, 2024, Wen, Huang, Jin, and Kan participated in a scheme wherein they would use fraudulently obtained Taiwanese passports and fraudulently opened bank accounts to convert the proceeds of fraudulent schemes and other illegal conduct into cashier's checks before depositing the cashier's checks into the financial accounts of third parties. Specifically, between August 2, 2023 and August 9, 2023, Wen and Jin directed Huang to travel from California to the homes of elderly tech support fraud victims in Oregon, Colorado, and Missouri to collect the proceeds of the tech support scheme. Upon his collection Huang, used fraudulently opened Chase Bank accounts to convert the funds from cash into cashier's checks made payable to third parties. Wen and Jin would instruct Huang to deposit the funds into the third parties' accounts or return the cashier's checks to them in California. A forensic examination of the electronic devices seized from the participants revealed Wen's use of a Chinese messaging and social media app, WeChat, to communicate the following to Huang: (1) the addresses of elderly fraud victims from which Huang was to collect the illegal proceeds; (2) an image of his debit card and authorization to purchase a flight to Oregon in order to collect fraud proceeds from an elderly victim; and (3) the name of S.P. and a Bank of America account number into which Huang was to deposit fraudulent proceeds collected from a Colorado victim. The examination also revealed messages from Huang to Wen and Jin containing an image of a $40,000 cashier's check made payable to S.P. and an image of a Bank of America receipt revealing the deposit of the S.P. account into the bank account identified by Wen as well as detailing Huang's difficulty in collecting the currency he was dispatched to Missouri to obtain from two tech support victims. After Huang was detained by local authorities in Missouri relative to his participation in the fraud attempted against the Missouri couple, Wen discussed with Huang and Jin misidentifying the leader of the conspiracy as someone other than Wen and Jin. Throughout the investigation, the Government has identified fraudulent transactions relative to the scheme as exceeding $8,000,000. Wen has been identified as engaging in transactions exceeding $1,500,000. At the time the defendant committed the instant offense he had overstayed a student visa and was not authorized to work in the United States.

Doc. [77] at 4-5.

4

Next, the Court considers the history and characteristics of Defendant. According to the Missouri Report, Doc. [113], Defendant reported that he is a citizen of China. Defendant indicated that he resided in Guangzhou, China, from birth to 2016.[3] Defendant claimed he lived in Connecticut from 2016 to 2018, as he was a student attending Post University, in Waterbury, Connecticut, where he studied finance. Defendant stated he relocated to Marina del Rey, California from 2018 to 2020, as he was a student attending West Los Angeles Community College, in Culver City, California, where he studied media. Defendant also reported that he resided in Irvine, California, from 2020 to 2022, as he was a student attending the University of California – Riverside, in Riverside, California (Riverside). Defendant indicated that in 2018, he was issued an I-20[4] by Riverside which reportedly expired "sometime" in 2023 or 2024. Defendant also told the pretrial services officer in Missouri that he is currently enrolled as a student at Riverside and stated that he has "95% of classes completed," toward obtaining a bachelor's degree in media, but he was unable to recall when he last attended college classes and stated that he is not currently taking classes. However, according to the California Report, Defendant indicated he had graduated from the Riverside, in 2023, with a bachelor's degree in media. Doc. [113-1] at 3. Jeffrey Othic, a special agent with Homeland Security Investigations, and the case supervisor, testified that Defendant's F-1 status was terminated on March 6, 2023, due to his

---

[3] Defendant had applied for a Canadian Temporary Resident Visa and a Student permit on December 17, 2014, to the Canadian Embassy in Beijing. On January 29, 2015, the application was refused as there were concerns Defendant had insufficient funds to support his studies and that Canada was not satisfied that he would leave at the end of the period authorized. Doc. [113] at 4.

[4] The Student and Exchange Visitor Information System, SEVIS, is a web-based system that the United States Department of Homeland Security (DHS) uses to maintain information regarding SEVIS certified schools, nonimmigrant students studying in the United States, and exchange visitor program sponsors and participants. DHS assigns international students who are studying full-time in the United States a unique identifier that is referred to as a SEVIS ID or SEVIS number. Once an international student is accepted into a program at a certified school, the school's designated school official will use the SEVIS ID to issue the student a Form I-20, "Certificate of Eligibility for Nonimmigrant Student Status." (I-20s are typically issued each academic year). Then, a student can take the I-20 to a consulate and apply for F-1 classification through the Department of State, a classification given to international students who are enrolled in a university in the United States. Once the student is accepted, they maintain F-1 status if they are attending school.

failure to enroll in school. *See also* Gov. Ex. 2.

The Missouri Report also reflects that Defendant reported he was issued a Chinese passport and traveled to China in 2020, where he visited his family for one month, but denied any other foreign travel. However, the California Report states Defendant reported visiting Thailand, the Philippines, and Singapore. Doc. [113-1] at 3. Further, Agent Othic testified that in 2020, Defendant had three entries through the San Ysidro port of entry from Mexico into the United States.

As to Defendant's employment status, Defendant reported to the Missouri pretrial services office that he has been unemployed since 2016 because he is a full-time student and receives financial support from his mother and father.[5] However, according to the California Report, Defendant reported that he planned to reapply for a work visa since graduating college, that he has been self-employed as a supplier of jewelry for multiple retail stores throughout Los Angeles, California, for six months and as an Uber driver and Lyft driver for two months. The California report also indicates that Defendant stated he earns approximately $3,000 per month between the above-mentioned jobs.

As to Defendant's financial resources, Defendant related to the Missouri pretrial services office that he has $300 in a checking account and denied having any other financial assets or liabilities. According to the California Report, however, Defendant claimed he receives $200 to $300 per month of financial support from his family members. He also reported the following monthly expenses: $2,000 for rent, $100 or utilities, and $60 for a cell phone bill. According to the Missouri Report, Defendant's rent is $2,100, but he stated that his mother and father are responsible for the monthly payment and that he relies on his parents for financial support. According to the Missouri Report,

---

[5] Defendant stated his parents live in China, his mother is unemployed, and his father is an anti-smuggling law enforcement official.

Defendant revealed that if he were granted bond, he would return to the apartment in Los Angeles he previously lived in with a roommate, but would live there with his mother and cousin, both citizens of China. Defendant also related that he makes no financial contribution to the household, as he is unemployed and relies on his mother and father for financial support.

As to the nature and seriousness of the offense and danger to community, Defendant is alleged to be involved in a multi-defendant indictment, indicative of his engagement with criminal associates. The instant offense poses a danger to the community as Defendant is charged with multiple counts of wire fraud and is alleged to have used a computer device to facilitate the fraudulent transactions involving elderly victims. Defendant has been identified as engaging in transactions exceeding $1,500,000. According to the charging documents, Defendant arranged travel for a co-defendant to travel from California to the homes of elderly tech support fraud victims in Oregon, Colorado, and Missouri to collect the proceeds of the tech support scheme. A forensic examination of the electronic devices seized from the participants revealed Defendant's use of WeChat to communicate to a co-defendant not only the addresses of elderly fraud victims a co-defendant was to collect the illegal proceeds from, but also an image of Defendant's debit card and authorization to purchase a flight to Oregon to do so. According to the California Report, a co-defendant indicated Defendant is an organizational leader of the conduct of the offenses before the Court. Doc. [113-1] at 4.

## IV.    Conclusion

The Court finds that the Government has established by a preponderance of the evidence that no condition or set of conditions will reasonably assure Defendant's appearance, and there is a serious risk that Defendant will flee. The Court therefore concludes detention is appropriate pending trial. Defendant is a Chinese national living in the United States illegally because his student visa expired in March of 2023. He has extensive ties abroad, and despite his claims to the contrary, Defendant has

traveled to multiple international destinations, including multiple trips across the Mexico border at San Ysidro. Further, the charges against Defendant involve a sophisticated fraud scheme in which he obtained and fraudulently used the Taiwanese passports of others and illustrates Defendant's ability to obtain a Taiwanese passport to flee the United States. Also, because of the anticipated amount of monetary loss, Defendant's leadership role, and the substantial financial hardship the scheme visited upon vulnerable individuals, Defendant could be facing a substantial sentence, and given that the charges are considered aggravated felonies, conviction of any of the charged counts could result in Defendant being deported to China. Finally, Defendant has consistently given conflicting information in response to questions asked of him by the pretrial services offices in California and the Eastern District of Missouri.

The Government has established by a preponderance of the evidence that Defendant presents a serious risk of flight if released, 18 U.S.C. § 3142(f)(2)(A), and that "no conditions or combination of conditions will reasonable assure the appearance of Defendant." 18 U.S.C. § 3142(e)(1).

Accordingly,

The Court **GRANTS** the Government's Motion for Pretrial Detention, Doc. [122], pursuant to 18 U.S.C. 3142(f)(2)(A).

## V.  Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections

facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Dated this 24th day of May, 2024.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE