**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JIACHENG CHEN, KAIYU WEN, and LIANG JIN,<br><br>    Defendants. | Case No. 4:23CR00470 MTS |

**MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS THE VERIFIED PETITION OF THIRD-PARTIES GANG LIN AND PEI ZHAO FOR ADJUDICATION OF INTERESTS PURSUANT TO 21 U.S.C. § 853(n)(3)**

Petitioners Gang Lin ("Gavin") and Pei Zhao ("Linda") (collectively referred to as "Petitioners"), by and through their counsel Alston & Bird LLP and Torridon Law PLLC, respectfully submit this Opposition to the United States of America's (the "Government") motion to dismiss their verified petition for adjudication of interests pursuant to 21 U.S.C. § 853(n)(3).

## I. INTRODUCTION

The Government's Motion to Dismiss (the "Motion") relies on the wrong law, misconstrues Petitioners' bases for challenging the forfeiture of the Subject Property, and assumes genuine disputes of material facts that cannot be adjudicated at the motion to dismiss stage. At every level, the Government's various challenges to Petitioners' assertions in the Verified Petition lack merit and therefore the Court should deny the Motion, set an initial case management conference to discuss the parties' requests for discovery, and a date certain for the ancillary proceeding pursuant to 21 U.S.C. § 853(n)(3).

*First*, the Government asserts the ancillary proceeding cannot be used to challenge the

1

forfeitability of the Subject Property.  The Government is incorrect.  As an initial matter, Petitioners are challenging the seizure warrant and the supporting affidavit(s) to determine whether there are any facts supporting the Government's initial seizure of the Subject Property: the entire amounts contained in the bank accounts.  Rights to forfeitable property vest in the Government "immediately upon the commission of a criminal act," and "a third party may prevail . . . only by establishing that he had a legal interest in the forfeited property before the underlying crime was committed."  *United States v. Watts*, 786 F.3d 152, 160 (2d Cir. 2015).  Accordingly, Petitioners are entitled to challenge the seizure to determine to what extent and when the Government's interest "vest."  In other words, Petitioners are challenging the Government's seizure of Petitioners' accounts as such property "was never truly the defendant's property and is not subject to forfeiture to the United States in the first instance."  *Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F. 3d 236, 244 (2d Cir. 2011).  This is particularly critical here where the Government indiscriminately seized Petitioners' bank accounts without any reasonable effort to discern which specific funds within the bank accounts are "tainted" or directly traceable as proceeds.  Notably, the Government's actions in initially seizing Petitioners' entire bank accounts only to then release approximately $2.7 million from Account #1831 confirm that its seizure was overly broad, and in turn, there are genuine disputes of material fact relating to the Government's interest in the Subject Property.

*Second*, the Government's various assertions that Petitioner Lin cannot be a bona fide purchaser of value ("BFP") because he "participated" in an apparent unlicensed money transmitting business misconstrues the law.  The Government neither charged nor obtained convictions under 18 U.S.C. § 1960, and the Government offers no evidence that the financial transactions at issue were conducted in the context of such an unlicensed money transmitting

2

business. Moreover, assuming *arguendo* the transactions were conducted as part of an unlicensed money transmitting business, the Government cites no authority holding that "participation" in such a business itself is a criminal violation, nor is there any. That is because the statute expressly provides that whoever "knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both." 18 U.S.C. § 1960. The plain language of the statute clearly encompasses only those that have managerial-type roles in connection with unlicensed money transmitting operations, and it is well established that "customers" of an unlicensed money transmitting business do not violate the statute. The Government has no evidence that Petitioner Lin was in the business of transmitting money.

*Third*, the Government's assertion Petitioner Lin cannot qualify as a BFP because this exception only applies to "tangible property," and "not funds in a financial account" is unsupported. The Government's reliance on *United States v. BCCI Holdings,* 980 F. Supp. 2 (D.D.C. 1997) does not stand for this proposition. Instead, *BCCI Holdings* was in a narrow and limited context of a third-party petitioner seeking to assert a legal interest in intangible assets in the form of general creditor rights. The assertion that funds in a bank account are not "tangible property," or that the BFP exception otherwise does not apply to "intangible" assets broadly is unsupported under any authority.

*Fourth*, the Government's assertion the BFP exception does not apply because Petitioner Lin's interest is the result of an "illegal contract" is wrong. The Government does not dispute Petitioner Lin exclusively communicated with his friend and non-party Mr. Bill Lu to exchange his Chinese RMB for United States Dollars. (Verified Pet., at ¶ 10.) The Government also does not dispute that Petitioner Lin has never met or communicated with any of the Criminal

3

Defendants. (*Id.*) Simply put, there is no "contract," let alone an "illegal contract," between Petitioner Gang Lin and the Criminal Defendants. What is more, the Government does not dispute that Petitioner Lin exchanged his Chinese RMB for United States Dollars for *equivalent* value, with no profit at all, and fails to explain how such a transaction violates the unlicensed money transmitting business statute. *See, e.g.*, *United States v. Banki*, 660 F.3d 665, 679 (2d Cir. 2011) ("[G]iving the term 'business' its 'plain and unambiguous' meaning . . . under § 1960 a 'business' is an enterprise that is carried on for profit or financial gain.") (citation omitted).

*Fifth*, whether Petitioner Lin was without cause to believe that the funds he received in exchange for his Chinese RMB were subject to forfeitability is an ultimate question of fact. Among other things, questions of fact exist as to whether Petitioner Lin was "without cause" to believe the funds he exchanged were subject to forfeiture in the United States because of his participation in an informal currency exchange process, his inquiries concerning the legitimacy of exchanging his funds, as well as his cultural background and relationship with Mr. Bill Lu. These questions cannot be answered as a matter of law, let alone on a motion to dismiss.

*Lastly*, the Government mischaracterizes Petitioner Pei Zhao's interests in the Subject Property. As Petitioner Pei Zhao asserted in the Verified Petition, she has an "undivided one-half interest in the accounts that were seized prior to any right, interest, or title that any of the Criminal Defendants may have had in the accounts." (Verified Pet., at ¶ 39.) Irrespective of whether the Government has an interest in specific funds within the bank accounts as a result of alleged illegal criminal activity, Petitioner Zhao undisputably holds an undivided, one-half interest in untainted funds. *See, e.g.*, *United States v. Lester*, 85 F.3d 1409, 1413 (9th Cir. 1996) (under California law, spouse has "a vested undivided one-half interest in the community property.") (citations omitted).

Those funds should be immediately released to Petitioner Zhao at minimum as she had no participation in any exchange of foreign currency.

For all these reasons, Petitioners respectfully request the Court deny the Government's Motion, set an initial Case Management Conference to discuss the parties' requests for discovery, and a date certain for the ancillary proceeding pursuant to 21 U.S.C. § 853(n)(3).

## II.   LEGAL STANDARD

A motion to dismiss a third-party petition for failure to state a claim is treated as a motion to dismiss a civil complaint under the Federal Rules of Civil Procedure. *See, e.g.*, *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004). The motion to dismiss stage of the ancillary proceedings place no evidentiary burden on petitioner and the facts set forth in the petition are assumed to be true. *See id.*, at 353 ("[I]t was error, on the government's motion to dismiss, to require [Petitioner] to make a *prima facie* showing that she was a bona fide purchaser."); Fed. R. Crim. P. 32.2(c)(1)(A). Instead, "[t]o survive a motion to dismiss, the petition need only 'state [] enough facts to state a claim to relief that is plausible on its face." *Willis*, 786 F.3d at 161 (citation omitted). A court may not dismiss a complaint unless it appears beyond a doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle [the petitioner] to relief." *See id.*

## III.   THE GOVERNMENT'S MOTION SHOULD BE DENIED

### A.   The Government's Initial Seizure of the Subject Property Raises Genuine Disputes Regarding Questions of Material Fact.

The Government's reframing of Petitioners' challenge to the initial seizure of the Subject Property is incorrect. (Mot., at p. 8.) Contrary to the Government's argument, the Petitioners are not "relitigating the forfeitability" of the Criminal Defendants' interest in the Subject Property.

5

Instead, the Petitioners are claiming, *inter alia*, that they have superior title to the Subject Property. The Verified Petition alleges that Petitioners cannot assess the validity of the Government's seizure and on information and belief, it did not have probable cause to seize the entirety of the Subject Property. (Verified Pet., at ¶¶ 25, 26.) This directly relates to when, and to what extent, the Government's alleged <u>interest</u> in the seized property vested. Indeed, Section 853 provides that "all property subject to forfeiture based on a criminal offense 'vests in the United States upon the commission of the [offense]." *Watts*, 786 F. 3d at 166 (quoting 21 U.S.C. § 853(c)). If the Criminal Defendants did not have any interest in any particular property, then it is "not subject to forfeiture to the United States in the first instance." *Willis*, 652 F.3d at 244. Third parties, such as Petitioners, can prevail under Section 853 if he or she had a legal interest before the underlying crime had been committed. *Watts,* 786 F. 3d at 166. Given that the Government has refused to provide a copy of the seizure warrant and supporting affidavit(s) to Petitioners despite repeated requests prior to the filing of the Verified Petition, there are genuine disputes as to material facts relating to the extent of the Government's alleged interest in the seized property.

Critically, the Government does not, and cannot, dispute in its Motion it had released approximately $2.7 million of seized funds to Petitioners. (Mot. at p. 6 ("The Government notes that, in January 2025, after discussions with Petitioner Lin and his counsel, the Government returned $2,737,781.61 (of the $2,912,201.61 seized funds) from Account 3 to Petitioner Lin.").) This is *prima facie* evidence, and an admission from the Government, that it seized funds that were not "proceeds" of any criminal activity and that Petitioners had superior title to the funds. The Government also asserts in its Motion that Defendant Tsz Kan admitted he had converted $170,000 into a cashier's check and Defendant Bowen Chen converted approximately $615,000 into a cashier's check payable to Petitioner Lin for deposit in Account 1. (*See* Mot., at p. 4.) Even

6

assuming this is true, this total amount does not equate to, or even come close to, the approximately $3.5 million remaining funds the Government has seized. The remaining portions are not "proceeds" and should be returned to the Petitioners immediately. At the very least, there is a genuine factual dispute whether the Government lacked probable cause to seize all or even some of the Subject Property and to what extent it had a vested interest in the funds. This issue is central to Petitioners' claim that they had superior title to the Subject Property over the Government's interest.

The Government's reliance on *U.S. v. Timley*, 507 F.3d 1125 (8th Cir. 2007) is misplaced. In particular, the Government asserts Petitioner Zhao cannot win her Petition as a *matter of law* because, "where forfeited property is derived from criminal proceeds" she can "never make a successful claim under § 853(n)(6)(A)." (*See* Mot., at p. 9.) This argument is without merit and should be rejected. The *Timley* court did not hold that a third party cannot win an ancillary hearing merely because the forfeited property involves proceeds of a crime. The Government takes language in *Timley* out of context and conveniently failed to quote to the actual rule cited by the court: "[A] third party who had a legal interest in the forfeited property **before** the underlying crime was committed can prevail in the ancillary proceeding on the ground that he had an interest in the property before the government's interest vested." *Timley,* 507 F.3d at 1130 (emphasis added) (citation omitted).

Indeed, in *Timley*, the petitioner was an attorney seeking $130,097 – which was forfeited as proceeds of a crime – as fees that his criminal defendant client committed to him. *See id.* at 1128. In assessing whether the petitioner had a legal interest in the $130,097 before the government vested its interest, the *Timley* court applied the "relation-back doctrine" to find based on undisputed facts that the government obtained its vested interest in the forfeited property before

7

the petitioner obtained his.  *See Timley*, 507 F.3d at 1131; *see also*, *United States v. Timley,* 443 F.3d 615, 628-29 (8th Cir. 2006) ("Timley I").  Thus, the court affirmed the district court's decision to dismiss the petition to the extent it relied on 21 U.S.C. § 853(n)(6)(A) since petitioner could not show his "priority interest."  *Timley II*, 507 F.3d at 113.

Unlike the petitioner in *Timley*, Petitioners have two distinct ways that they have superior title.  First, the Government cannot dispute that the "funds" – which are monies the Petitioners earned through work and investing while they lived in China – belonged to Petitioners prior to the Criminal Defendants began their scheme.  Thus, Petitioner had "legal interest in the forfeited property **before** the underlying crime was committed." *See Timley*, 507 F.3d at 1130 (emphasis added).  Second, as noted previously, to the extent the Government cannot show every dollar it seized from Petitioners' bank accounts were "proceeds" of the underlying offense, the Petitioners, as a matter of law, have superior title.  At minimum, these are factual disputes that must be adjudicated after discovery and the ancillary hearing and inappropriate for ruling at the Motion to Dismiss stage.

Likewise, the Government's reliance on *United States v. White*, 675 F.3d 1073, 1077-78 (8th Cir. 2012) in support of its assertion that a petitioner cannot use the ancillary proceeding to "relitigate the nexus between the criminal acts of [a defendant] and the forfeited [assets]" is also misplaced.  Petitioners' challenge to the Government's initial seizure of the Subject Property is relevant to show Petitioners' ownership interests in the seized funds, particularly where, as here, Petitioners were not parties to the underlying criminal action.  *See, e.g.*, *United States v. Bailey*, 926 F. Supp. 2d 739, 763 (4th Cir. 2013) ("Serious due process questions would be raised, however, if third parties asserting an interest in forfeited assets were barred from challenging the validity of the forfeiture.  The determination made at the defendant's criminal trial that the property

8

was subject to forfeiture cannot be considered binding on persons who were not only not parties to the criminal action but were specifically barred from intervening."); *see also id.* at 763-764 ("the Government has offered no authority to suggest that once a preliminary order of forfeiture is entered, a court is prohibited from revisiting the determination of nexus *sua sponte*.").

**B.      "Participation" in an Unlicensed Money Transmitting Business Does Not Preclude the Bona Fide Purchase of Value Exception.**

As an initial matter, the Government attempts to cite a statute – 18 U.S.C. § 1960 – that it neither charged, nor obtained convictions under, to justify its untenable legal position.  Moreover, there has been no finding that the informal money exchange network is an "unlicensed money transmitting business," Petitioners dispute that informal exchange of currency was conducted as part of an unlicensed money transmitting business, and the Government cites no authority that "participation" in an apparent unlicensed money transmitting business precludes a third-party from qualifying as a BFP.  (*See* Mot., at pp. 11-12.)  To state simply, there is no authority that supports this position.

Under 18 U.S.C. § 1960(a), whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business violates the statute. Notably, the Government does not assert Petitioner Lin himself violated this statute but rather, that he merely "participated" in such an unlicensed money transmitting "network."  (*See* Mot., at p. 11 ("Petitioner Lin describes his use of such an illegal money remitting network.").)  The statute does not encompass good faith customers such as Petitioner Lin that merely exchanged his Chinese RMB for equivalent value of United States Dollars.  Indeed, the language of Section 1960 "tracks that of Section 1955" (the federal illegal gambling business statute), and excludes "customers." *See United States v. Banki*, 2010 U.S. Dist. LEXIS 51330, at *13-14 (S.D.N.Y. May 25, 2010);

9

*see also United States v. Grezo*, 566 F.2d 854, 857 (2d Cir. 1977) (the term "conducts" includes "agents, runners, 'independent contractors,' salesmen, and excludes only betting customers.") (citation and quotations omitted); *Sanabria v. United States*, 437 U.S. 54, 70, n. 26 (1978) ("Numerous cases have recognized that [the illegal gambling statute] proscribes any degree of participation in an illegal gambling business, except participation as a mere bettor."). The Government's assertion that Petitioner Lin therefore "participated" in an apparent unlicensed money transmitting business is not and cannot be a basis to preclude him as a BFP.

      C.      **The Government is Incorrect that There Can Be No Interest in Funds in a Financial Account.**

The Government also misinterprets the law when it asserts that the BFP exception does not extend to funds in a financial account. (*See* Mot., at p. 12 (citing to *BCCI Holdings*).) *BCCI Holdings* does not stand for this proposition. *BCCI Holdings* involves whether a third party can assert an interest in seized assets in the form of general creditor rights, which the BFP exception does not protect. The petitioner in *BCCI Holdings* had deposited funds with a bank that the Government charged with various financial crimes. *BCCI Holdings*, 880 F. Supp. at 4. The Government shut the bank down and then seized the bank's assets. *Id.* The petitioner had requested it receive its deposits back because it was a BFP and had obtained a legal interest in specific assets of the bank. *Id.*, at 8. In rejecting the petitioner's assertion it was a BFP, the court noted that after a deposit is made into a bank, the transferee becomes a general creditor of that bank. *See id.* ("Once a deposit is accepted by a bank, it becomes part of the general deposits of that bank, and the transferee becomes a general creditor of the bank."). The petitioner therefore had an interest in the bank as a creditor, and not necessarily in the funds within the financial account.

The facts presented within *BCCI Holdings* do not parallel the factual circumstances of this action. The Government has not seized assets of any particular bank and Petitioner Lin is not asserting interests as a general creditor. Instead, Petitioner Lin is asserting his interest in the Subject Property as a bona fide purchaser of value that supersedes the Government's purported interest in the funds. Indeed, no case has held that a BFP can only assert an interest in "tangible" property and in fact, courts have held to the contrary that the BFP exception extends to intangible property. *See, e.g.*, *United States v. Huntington Nat'l Bank*, 682 F.3d 429, 436 (6th Cir. 2012) ("The government provides no rationale for this court to distinguish tangible and intangible property when construing the extent of the BFP exception.").

> D.  **Petitioner Lin is Not Precluded from Qualifying as a BFP Because There is No "Illegal Contract."**

The Government likewise incorrectly asserts Petitioner Lin cannot qualify as a BFP because he was a "member of a network operating an illegal money transmitting business." (Mot., at p. 13.) This is also incorrect. Petitioner Lin has not alleged he is a "member" of any informal exchange network. (*See generally* Verified Pet.) He also has not alleged that funds were transmitted to him through an "illegal business." (*See id.*) As Petitioner Lin alleged, the Chinese Government restricts the amount of foreign currency exchange to $50,000 per year per adult. (*See id.*, at ¶ 9.) Participation in or using these informal exchange networks is not a violation of U.S. law. (*See id.*, at ¶ 3(c); Section 2, *supra*.) There is no "illegal contract" between Petitioner Lin and the Criminal Defendants. The Government does not dispute in its Motion that Petitioner Lin has had no interaction and has never met any of the Criminal Defendants. (*See generally* Mot.) There is simply no evidence to support the assertion that Petitioner Lin obtained his interest in the seized funds by way of an "illegal contract."

11

### E. The Government Assumes True Genuine Disputes of Material Fact.

As a final argument, the Government asserts Petitioner Lin was not without cause to know that the Subject Property was subject to forfeiture because he "was using an unlicensed money transmitting network to acquire money in violation of Chinese law." (Mot. at p. 13.) The Chinese Government's capital controls are an obvious attempt to surveil Chinese citizens and prevent funds from flowing into the United States. The Government asks this Court to assume as true genuine disputes as to material facts that can only be adjudicated at the ancillary proceeding. For example, the Government admits in its Motion that Defendants Kan and Chen converted alleged criminal proceeds into cashier's checks payable to Petitioner Lin. (Mot., at p. 4.) There is absolutely no reason for Petitioner Lin to suspect that official certified cashier's checks issued by highly regulated financial institutions were somehow linked to alleged criminal activity and the Government does not allege that large amounts of physical cash were provided to Petitioner Lin.

Moreover, factual issues exist as to whether Petitioner Lin was without cause to believe that exchanging his Chinese RMB for United States Dollars which is "in violation of Chinese law," consequently would render the United States Dollars subject to forfeiture in the United States, even where Petitioner Lin has continuously paid U.S. income tax on the income derived from his assets located in China. (Verified Pet., at ¶ 6.) This is not a basis to support a forfeiture in the United States. Questions of fact also exist as to Petitioner Lin's inquiries to Mr. Bill Lu concerning the legitimacy of exchanging his funds. Further, factual determinations as to the circumstances of Petitioner Lin's state of mind, cultural heritage, and the common nature of informal foreign exchange transactions are likewise all directly relevant to whether Petitioner Lin was "without cause" to know that the Subject Property was subject to forfeiture. These factual issues simply cannot be adjudicated on a motion to dismiss. *See, e.g.*, *United States v. Schneider*, 2017 U.S.

12

Dist. LEXIS 192551, at *9 (W.D. Mo. Oct. 31, 2017) ("a decision on a [motion to dismiss] should be deferred if disposing of the motion involves deciding issues of fact that are inevitably bound up with evidence about the alleged offense itself.").

    **F.**    **The Government Mischaracterizes Petitioner Pei Zhao's Interest in the Subject Property.**

As for Petitioner Zhao, the Government focuses on the wrong argument. The Verified Petition alleges Petitioner Zhao has "undivided one-half interest in the accounts that were seized <u>prior</u> to any right, interest, or title that any of the Criminal Defendants may have had in the accounts." (Verified Pet., at ¶ 39 (emphasis added).) Under California law, Petitioner Pei Zhao has an undivided one-half interest in community property. *See, e.g.*, *Lester*, 85 F.3d at 1413. The Government does not dispute Petitioner Zhao has an undivided, one-half interest in untainted property. Instead, it asserts an entirely different point: that Petitioner Zhao does not hold a superior interest in criminal proceeds. (*See* Mot., at p. 9.) At present, Petitioner Zhao's interest cannot be adjudicated at the motion to dismiss stage because factual issues exist as to the Government's purported interest in the entirety of the seized accounts. (*See*, *supra*, Section 1.) Accordingly, the Government's Motion as it relates to Petitioner Zhao must be denied.

**IV.**    <u>**PETITIONERS RESPECTFULLY REQUEST THE COURT ISSUE AN ORDER GRANTING DISCOVERY PRIOR TO THE ANCILLARY HEARING**</u>

As the Court is aware from Petitioners' Verified Petition (Doc. No. 321), despite having seized Petitioners' Subject Property for nearly two years, the Government has not disclosed sufficient information to Petitioners regarding the justification and/or bases for seizing the Subject Property other than that the seizures are related to the underlying criminal case in the above-captioned action. In particular, the Government has not disclosed which alleged deposits within

13

the Subject Property can purportedly be traced to illegal criminal activity, the seizure warrant and supporting affidavit(s) supporting the blanket seizure of Petitioners' entire deposit accounts[1], or what facts (not simply assertions of law) support the Government's position that Petitioner Lin is not a bona fide purchaser of value within the meaning of 21 U.S.C. § 853(n)(6)(B). This discovery is critical and necessary for Petitioners to prepare for the ancillary proceeding.

### A. Discovery is Appropriate Prior to the Ancillary Hearing to Develop the Factual Record.

Rule 32.2(c)(1)(B) of the Federal Rules of Criminal Procedure provides that a court may "permit the parties to conduct discovery in accordance with the Federal Rules of Civil Procedure if the court determines that discovery is necessary or desirable to resolve factual issues." Since the enactment of Rule 32.2, courts have routinely ordered discovery in ancillary proceedings where, as here, there is a dispute of fact that needs to be resolved before a decision on a third-party petition can be rendered. *See, e.g.*, *United States v. Caparotta*, 571 F. Supp. 2d 195, 202 (D. Me. 2008) (discovery may be conducted in accordance with Federal Rules of Civil Procedure to resolve questions of facts); *United States v. Corpus*, 491 F.3d 205, 208 (5th Cir. 2007) (court may permit the parties to conduct discovery in accordance with the Federal Rules of Civil Procedure). Granting Petitioners to conduct discovery on the Government is necessary and appropriate to develop the factual record and/or resolve genuine disputes as to material facts prior to the ancillary proceeding. Such discovery will include, but not limited to, and is not intended to be an exhaustive list:

1. The seizure warrant and supporting affidavit(s) in connection with seizing Petitioners' Subject Property. This discovery is needed to assess whether the Government had

---

[1] As stated previously, the Government admits that it over seized Petitioner Lin's funds as it later returned monies back to Petitioner Lin following Petitioners' extensive meet and confer with the Government. (*See* Mot., at p. 6.)

14

probable cause and any interest in the seized Subject Property. (*See* Doc. No. 321, at ¶¶ 25-27.)

2. Any recordings, transcripts, or documents relating to the Government's interview with Mr. Bill Lu. This discovery is needed to assess the Government's contention that Petitioners are not bona fide purchasers of value pursuant to Section 853(n)(6)(B). (*See id.*, at ¶¶ 32-38.)

3. Any documents or communications produced by the Criminal Defendants in the underlying criminal case in the above-captioned action, including Defendants Kaiyu Wen and others referencing Petitioners or Mr. Bill Lu. This discovery is also needed to assess the Government's contention that Petitioners are not bona fide purchasers of value pursuant to Section 853(n)(6)(B). (*See id.*, at ¶¶ 32-38.)

4. Any documents or communications referencing the exact deposits in the Subject Property that the Government claims can be traced to alleged criminal activity. This discovery is needed to assess the Government's decision to improperly seize <u>entire</u> deposit accounts. (*See id.*, at ¶¶ 28-31.)

5. Any documents or communications identifying the alleged victims of the Criminal Defendants, including the amounts taken from them, that may potentially be entitled to restitution, other than the two victims identified as "D.B." and "C.V.B." in the Government's Disclosure of Parties Potentially Entitled to Restitution, at Doc. No. 252.

Petitioners also respectfully request additional discovery, including but not limited to, the depositions of HSI Special Agents Mark Kutrip and Marijo Gronewold, and the Criminal Defendants, after obtaining initial discovery from the Government.

## V.      **CONCLUSION**

For all the reasons set forth in this Opposition, Petitioners respectfully request the Court deny the Government's Motion.

| | |
|---|---|
| Dated: July 31, 2025 | */s/*   **_Byung J. "BJay" Pak_** <br> Byung J. "BJay" Pak, *pro hac vice* <br> **ALSTON & BIRD LLP** <br> Tel: (404) 881-7000 <br> Fax: (404) 858-8050 <br> 1200 Peachtree Street, N.E. <br> Atlanta, GA 30309 <br> BJay.pak@alston.com <br><br> Jonathan J. Kim, *pro hac vice* <br> **ALSTON & BIRD LLP** <br> Tel: 213-576-1000 <br> Fax: 213-576-1100 <br> 350 South Grand Avenue, 51st Floor <br> Los Angeles, CA 90071 <br> Jonathan.Kim@alston.com <br><br> Jeff Jensen <br> **TORRIDON LAW PLLC** <br> 13354 Manchester Road, Suite 210 <br> Tel: (314) 920-0138 <br> St. Louis, Missouri 63131 <br> jjensen@torridonlaw.com <br><br> Mary Daly, *pro hac vice forthcoming* <br> **TORRIDON LAW PLLC** <br> 801 17th Street, NW, Suite 1100 <br> Washington, D.C. 20006 <br> mdaly@torridonlaw.com <br><br> Attorneys for Petitioners Gang Lin and Pei Zhao |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2025, I transmitted via electronic mail a copy of the foregoing to all parties and counsel of record in this action through the Court's ECF system.

Dated:        July 31, 2025              /s/     **Byung J. "BJay" Pak**
                                         Byung J. "BJay" Pak, *pro hac vice*
                                         **ALSTON & BIRD LLP**
                                         Tel: (404) 881-7000
                                         Fax: (404) 858-8050
                                         1200 Peachtree Street, N.E.
                                         Atlanta, GA 30309
                                         BJay.pak@alston.com